# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

In re: NATHAN EDWARD HOLMAN and
     SHALA RENEE HOLMAN

                              Debtors.

CARL B. DAVIS

                              Appellant.

                                                              Case No. 17-CV-1118-EFM

NATHAN EDWARD HOLMAN and
SHALA RENEE HOLMAN,

                              Appellees.

# MEMORANDUM AND ORDER

       This matter comes before the Court on the Trustee Carl B. Davis's appeal of the bankruptcy court's denial of the Trustee's motion to dismiss. The Trustee argues that the bankruptcy court erred when it found that language in 11 U.S.C. § 1328(a) required it to discharge Debtors' bankruptcy even though cause existed to dismiss the case pursuant to 11 U.S.C. § 1307(c). In addition, the Trustee contends that the bankruptcy court erred in finding that the court must revoke a confirmation order under 11 U.S.C. § 1330(a) before the court could consider misconduct that arose prior to that order. Because the Court finds the first issue dispositive, and affirms the bankruptcy court's holding that the use of the word "shall" in § 1328(a) mandates discharge, the Court need not reach the second legal issue.

## I.  Factual and Procedural Background

Shala and Nathan Holman (Debtors/Appellees) filed their bankruptcy case on November 3, 2011.  Nathan is a self-employed chiropractor.  Shala was a physician's assistant (until February 2013) and a Rodan + Fields associate or consultant.  They proposed a Chapter 13 plan requiring them to make 60 monthly payments of $707.  In 2012, the bankruptcy court entered an agreed order confirming a modified plan of monthly payments of $1,517 for 57 months.

The standard confirmation order set out duties on the Debtors.  Some of these duties included: (1) Debtors notifying the Trustee of any change in employment; (2) Debtors timely filing all tax returns coming due during the case and providing copies to the Trustee; (3) prohibiting Debtors from incurring any new debt without the Trustee's or court's approval; and (4) prohibiting Debtors from selling, encumbering, or otherwise disposing of their assets without a court order.

Between June 2012 and March 2015, Debtors sought three modifications of their plan.   In April 2015, Debtors filed their fourth motion to modify.  They requested reduction of their plan payment and stated that they had experienced a reduction of income since the filing of their case.  In support of this motion, Debtors included revised schedules I and J which disclosed that Shala was involved in "direct sales," had been for six years, and was receiving $4,558 a month in commissions.  The Trustee objected to this motion arguing that it was not proposed in good faith and that Debtors could afford to pay more to their creditors than alleged.  The bankruptcy court set trial for October 13, 2015.

On October 12, 2015 (the day before the scheduled trial), Debtors filed a fifth motion to modify.  In this motion, although they again stated that they had a drop in income, they proposed increasing their plan payment by approximately $2,000 a month for the remainder of the plan.  The Trustee also objected to this request stating that it was not proposed in good faith.

The fourth modification motion went to trial on October 13, 2015. Before the bankruptcy court issued a ruling, however, the Trustee and Debtors entered into an agreed order on December 2, 2015, resolving the Trustee's objections to the fourth and fifth modifications. The resolution provided for Debtors to pay $3,522 a month for three months and $4,725 a month for the remaining nine months of the plan.

On July 26, 2016, the Trustee filed a second motion to dismiss after Debtors defaulted on their plan payments and for failure to pay post-petition taxes. The United States also filed its own dismissal motion on August 23, 2016. On October 24, 2016, the Trustee amended the motion to dismiss to include dismissal for lack of good faith.

On December 15, 2016, Debtors completed their plan payments. As to the Trustee's motion to dismiss, discovery was required to be completed by March 3, 2017, and trial was set for March 22, 2017. In January 2017, the Trustee further amended the motion to dismiss. Trial was held on March 22, 2017.

On May 9, 2017, the bankruptcy court issued its order on the Trustee's motion to dismiss. In this order, the bankruptcy court found that the evidence demonstrated that Debtors had flouted their duties throughout the case. The court found that there was ample cause to dismiss the case under § 1307(c) because of unreasonable delay by Debtors, material default by Debtors, and lack of good faith.

Specifically, the bankruptcy court found that Shala misrepresented her employment status for several years, claiming that she was unemployed although actually working for Rodan + Fields. Shala first revealed her employment in 2015, although she had been working for Rodan + Fields for six years at that time. She made between $30,000 and $40,000 a year in 2012 and 2013. In

2014, Shala's earning records showed income of $58,729, and in 2015, they showed gross income of $126,729.

Debtors incurred post-petition debts without the Trustee's or court's approval, and the bankruptcy court stated that some of those debts appeared to have been actively concealed. Debtors owed the Internal Revenue Service approximately $75,000 for the years 2014, 2015, and 2016. Although Debtors had an adjusted gross income in each of those years of approximately $100,000, they only paid taxing authorities $3,400. Debtors also purchased two cars and titled those cars in Shala's parents' names "due to the bankruptcy." In addition, Nathan drove a Denali that he apparently acquired from Shala's mother during the bankruptcy, but he did not disclose that or how the vehicle is titled. As further evidence of Debtors' violation of the confirmation order, the bankruptcy court noted Shala's incorporation of her business and a residential apartment lease in Kansas City.

The bankruptcy court also noted Debtors' bad faith. Evidence included repeated inaccurate statements concerning their debts, income and expenses (as noted above). Debtors also failed to disclose ten bank accounts. The court noted that Debtors' actions demonstrated disregard for the bankruptcy process and the court's orders, and that they abused the provisions, purpose, and spirit of Chapter 13. Although the court found ample cause to dismiss the case, it found that two reasons prevented it from doing so.

First, the court found that the Trustee had challenged most of Debtors' bad faith conduct at the October 2015 trial. After the evidence was presented, the parties agreed to an order on December 2, 2015, that stated in part: "To resolve the Trustee's lack of good faith objection to confirmation of their modified Plan, Debtors herein agree to . . . ." The bankruptcy court determined that allowing the Trustee to reopen the bad faith issues that had occurred prior to the

agreed order would be the equivalent of revoking the agreed order. 11 U.S.C. § 1330(a) only allows the revocation of a confirmation order (1) if it was "procured by fraud" and (2) only after a party in interest files an adversary proceeding within 180 days of the order's entry. The bankruptcy court found that even if the agreed order had been procured by fraud,[1] the Trustee's dismissal motion was not filed until 237 days after the agreed order. Thus, the bankruptcy court determined that any bad faith issues occurring prior to the agreed order could not be at issue.

Second, and most importantly, the bankruptcy court found that Debtor's completion of plan payments was a barrier to dismissal. The court noted that dismissal was discretionary under § 1307(c) because of the word "may," but that discharge was mandatory under § 1328(a) because of the word "shall." Because Debtors had completed their payment plan while the Trustee's motion to dismiss was pending, the court found that Debtors were entitled to a mandatory discharge pursuant to § 1328(a).[2]

The Trustee appealed the bankruptcy court's order to this Court. The Trustee then moved, in bankruptcy court, for a stay of judgment pending appeal. The bankruptcy court denied the Trustee's motion finding that the Trustee's likelihood of success on appeal was small and that the other three factors weighed against the Trustee.

In this Court, the Trustee again moved for a stay pending appeal.[3] Debtors failed to respond to this motion and failed to appear at the scheduled hearing on the motion. Thus, the Court found

---

[1] The bankruptcy court did not make a finding as to whether the agreed order was procured by fraud.

[2] Debtors apparently had not sought a discharge at the time the motion to dismiss was ruled upon, but the court noted that unless they were otherwise disqualified from receiving one, §1328(a) required the court to grant one.

[3] Pursuant to Fed. R. Bankr. P. 8007(a)(1)(A), a party must generally first ask the bankruptcy court for a stay.

that the Trustee's motion was unopposed and that the Trustee made a prima facie showing that the four factors for granting a stay weighed in the Trustee's favor.

Debtors filed a Motion for Reconsideration and requested that they be allowed to file a response to the Trustee's Motion to Stay out of time. This Court allowed the response and held a hearing on Debtors' Motion for Reconsideration. Finding that Debtors failed to identify any factual circumstances or law that would entitle them to reconsideration of the Court's previous order, the Court denied Debtors' motion.

The matter currently before the Court is the Trustee's appeal of the bankruptcy's court's order denying the Trustee's motion to dismiss.

## II.    Legal Standard

The district court sits as an appellate court on an appeal from the bankruptcy court. The standard of review governing the bankruptcy court's factual findings is whether they are clearly erroneous.[4] When reviewing the bankruptcy court's conclusions of law, the standard of review is de novo.[5] Generally, "[t]he applicable standard of review of an order dismissing a Chapter 13 bankruptcy case is abuse of discretion."[6] However, "[i]f in making those orders, the trial court makes conclusions of law, those are reviewable *de novo*, requiring an independent determination

---

[4] *In re Peterson Distrib., Inc.*, 82 F.3d 956, 959 (10th Cir. 1996).

[5] *Id.*

[6] *In re Armstrong*, 303 B.R. 213, 218 (B.A.P. 10th Cir. 2004).

of the legal issues, giving no special weight to the bankruptcy's court decision."[7]  Furthermore, "[t]he bankruptcy court's interpretation of a statute is a question of law."[8]

Here, the bankruptcy court denied the Trustee's motion to dismiss, which would appear to make the standard of review an abuse of discretion.  Indeed, 11 U.S.C. § 1307(c) provides that the bankruptcy court *may* dismiss a case.  However, the bankruptcy court, in denying the Trustee's motion to dismiss specifically stated that if it had "the discretion to deny a discharge and dismiss this case, [it] would.  As it is, the debtors completed their plan payments and [the court] lack[s] discretion to dismiss this case in spite of their conduct."  The bankruptcy court found that it was constrained by language in a different statute, 11 U.S.C. § 1328(a), and could not grant the discretionary dismissal.[9]  Indeed, the bankruptcy court found that the use of the word "shall" in § 1328(a) compelled the conclusion that dismissal could not occur.  Thus, the bankruptcy court made conclusions of law and engaged in statutory interpretation when making its decision that it could not dismiss the case.  Thus, the standard of review on these conclusions of law and statutory interpretation is de novo.[10]

---

[7] *In re Arenas*, 535 B.R. 845, 849 (B.A.P. 10th Cir. 2015).

[8] *United States v. Montgomery*, 475 B.R. 742, 746 (D. Kan. 2012) (citing *In re Overland Park Fin. Corp.*, 236 F.3d 1246, 1251 (10th Cir. 2001)).

[9] Several times throughout the order, the bankruptcy court stated that "[d]espite there being ample cause to convert or dismiss their case, § 1328(a) requires the Court to instead grant the debtors a discharge and deny the Trustee's and the United States' motions as moot."  The bankruptcy court also relied upon language, and its interpretation, of a different statute, 11 U.S.C. § 1330(a), as part of its reasoning to deny dismissal.

[10] *See also In re Klaas*, 858 F.3d 820, 827 (3d Cir. 2017) (noting in a case involving the interpretation of §§ 1307(c) and 1328(a) that courts exercise plenary review "over any conclusions of law that form the basis for an exercise of discretion").

### III. Discussion

The Trustee argues that the bankruptcy court erred when making two legal determinations. First, the Trustee contends that the court erred by determining that the language in § 1328(a) required the court to discharge the bankruptcy even though cause existed to dismiss the case and a dismissal request pursuant to § 1307(c) was pending before the court. The Trustee asserts that the bankruptcy court's reasoning adds a nonexistent deadline into § 1307(c). In addition, the Trustee argues that the bankruptcy court erred when it found that Debtors' plan for reorganization had to be revoked under § 1330(a) before a party in interest could request dismissal of the bankruptcy under § 1307(c) for events occurring prior to that confirmation order.

Debtors do not add any meaningful response or argument to the Trustee's motion. They do not discuss the cases nor the law that the Trustee cites. Instead, they simply paraphrase or repeat verbatim the bankruptcy court's order and state that it is correct.

The first question the Court must answer is whether § 1328(a) trumps § 1307(c). Several courts have discussed the meaning of the word "shall" in § 1328(a) and have concluded that a bankruptcy court must grant the debtor a discharge as soon as practicable after completion of all payments under the plan. These courts reason that the word "shall" requires discharge.

A case with similar facts to this case is one from the Bankruptcy Court for the Southern District of Texas, *In re Parffrey*.[11] There, the plan prohibited the debtor from incurring additional debt except upon written approval from the Trustee.[12] The United States Internal Revenue Service ("IRS") filed a motion to dismiss because the debtor failed to file postpetition federal tax returns

---

[11] 264 B.R. 409 (Bankr. S.D. Tex. 2001).

[12] *Id*. at 411.

and incurred income tax liability without the trustee's approval.[13]  In response to the motion, the debtor paid the last four payments of his plan.[14]  The court concluded that the debtor prepaid his plan to defeat the IRS's motion to dismiss because he made the payment the day before the hearing on the IRS's motion to dismiss.[15]

Although the court found that there was cause to dismiss the case, it determined that it did not have discretion in the matter.[16]  Relying on the language in § 1328(a), the court found that "[t]he statute provides that when payments are complete, the Court *shall* grant a discharge."[17]  Thus, the court concluded that it did not have discretion to grant the IRS's motion to dismiss, and it ordered the parties to proceed with administrative matters to conclude the case.[18]

Two other cases have also noted the mandatory nature of § 1328(a).  In *In re Fridley*,[19] the Bankruptcy Court for the Western District of Washington stated that § 1328(a) "is a mandatory provision that provides no discretion to the bankruptcy court."[20]  The court then considered whether the debtors had made all payments under the plan.[21]  The court ultimately concluded that

---

[13] *Id.* at 410-11.

[14] *Id.* at 411.

[15] *Id.*

[16] *Id*. at 413-15.

[17] *Id.* at 414.

[18] *Id.* at 414-15.

[19] 2007 WL 2848383 (Bankr. W.D. Wash. 2007).

[20] *Id*. at *2 (citing *In re Parffrey*, 264 B.R. at 414).

[21] *Id.*

the debtors were not entitled to a discharge because they had not completed all payments as required by their plan.[22]

In *In re Klaas*, the Third Circuit considered the discretionary nature of § 1307(a) and the mandatory nature of § 1328(a). The debtors had made all their required payments at the end of their sixty-month plan.[23] In month 61, however, the Trustee filed a motion to dismiss pursuant to § 1307(c) because the final calculation showed that the debtors owed a little more money.[24] The Trustee stated that the motion would be withdrawn if the debtors paid the money, which the debtors did within 16 days, but a creditor had joined in the motion by that time and continued seeking dismissal.[25]

The Third Circuit reviewed whether the bankruptcy court could exercise its discretion and deny the motion to dismiss and instead grant a completion discharge under § 1328(a) despite the debtors not paying the full amount during the 60-month plan.[26] The court concluded that "§ 1328 directs bankruptcy courts to issue a completion discharge if the debtor has completed 'all payments under the plan.' "[27] The court found, however, that §1328(a) does not include "an express requirement that such payments were made within five years."[28] Thus, the Third Circuit determined that the bankruptcy court could exercise its discretion under § 1307(c) and not dismiss

---

[22] *Id.* at *4-5.

[23] 858 F.3d at 824.

[24] *Id.* Although not entirely clear, the shortage in the amount appeared to be "largely due to an increase in the Trustee's fee during the term of the plan, and not to any missed payments during the plan term." *Id.* at n. 1.

[25] *Id.* at 824-25.

[26] *Id*. at 828.

[27] *Id*. at 829 (quoting 11 U.S.C. § 1328).

[28] *Id.*

the case (for failure to complete the payments within five years) but instead was within its authority to grant the debtor a reasonable grace period to cure.[29] Even though the grace period exceeded five years, the debtors' payment was still "under the plan," and §1328(a) then required a discharge.[30]

The Trustee directs the Court's attention to two cases in which bankruptcy courts have granted motions to dismiss despite the completion of all plan payments. In *In re Wheeler*,[31] the debtors made payments for 36 months and the time period ran "which would ordinarily result in a request for the entry of a discharge."[32] Instead, the trustee filed a motion to dismiss "because the debtors did not disclose significant changes in their income during the life of the plan."[33] The Bankruptcy Court for the Northern District of Indiana noted that "[t]he proper functioning of the bankruptcy system depends upon the complete and accurate disclosure of information concerning the debtor's assets, liabilities, income, expenses and financial affairs."[34] The court concluded that debtors should have disclosed this material information and granted the trustee's motion to dismiss.[35]

---

[29] *Id*. at 830.

[30] *Id.*

[31] 503 B.R. 694 (Bankr. N.D. Ind. 2013).

[32] *Id*. at 695.

[33] *Id.*

[34] *Id.* at 696.

[35] *Id.* at 697.

In *In re Teeter*,[36] the trustee moved to dismiss the case in the 60th month of the debtors' plan because the debtors had failed to provide the trustee with copies of their tax returns until the 58th month. When the trustee received the tax returns, the debtors' income had increased over the life of the plan by more than $113,000. The Bankruptcy Court for the Western District of Washington originally concluded that although the failure to turn over the returns was problematic, the trustee's failure to raise the issue until the end of the case was more problematic. Upon a motion for reconsideration, the court concluded that it had committed clear error. The court found that pursuant to the confirmation order confirming the debtors' plan, the debtors had an independent duty to disclose any changes in income during the life of the plan. The court found that it should have previously considered that duty. Finding that the debtors brought the situation on themselves and that they had paid nothing to their unsecured creditors, the court ordered the trustee to submit its motion to dismiss again.[37]

In sum, there are cases that allow dismissal at the plan's end and cases that do not allow it and instead find that discharge is mandatory under § 1328(a) if the debtor has completed plan payments. The few cases that allow for dismissal, however, are not that persuasive because neither court discussed § 1328(a) at all. Thus, it is unclear whether these courts considered the statute and whether it would have changed those decisions. The fact that these courts did not discuss §1328(a) diminishes any value those cases have in determining the conflict between §§ 1328(a) and 1307(c).

With regard to the cases finding that § 1328(a) mandates discharge, the only conflict between courts appears to be what constitutes "completion by the debtor of all payments under the

---

[36] Case No. 11-49800-BDL (Bankr. W.D. Wash. 2017) (unpublished).

[37] It is unclear what happened when the trustee submitted the motion to dismiss the second time.

plan." Courts disagree as to whether certain payments are made "under the plan" and whether there are temporal limitations. For example, in *In re Fridley*, the Bankruptcy Court for the Western District of Washington found that § 1328(a) is a mandatory provision if the debtors complete all payments under the plan.[38] However, because the debtors sought to pay off their plan early (22 months early), the court found that the payments were not "under the plan" and discharge was unwarranted.[39] And in *In re Klaas*, the Third Circuit determined that even though the plan payments were not complete until after the 60th month, the debtor still completed all payments "under the plan."[40]

Although it appears that some courts have different interpretations about the meaning of "payments under the plan" and whether there are temporal limitations as to whether those payments may be considered completed "under the plan," there are no such issues here. In this case, Debtors did not pay off the plan early. In addition, Debtors' payments did not extend past the 60-month plan. Instead, Debtors completed their plan payments right on time. It just happened while the Trustee's motion to dismiss was pending before the bankruptcy court.

The Tenth Circuit has stated that " '[s]hall' means shall. The Supreme Court and this circuit have made clear that when a statute uses the word 'shall,' Congress has imposed a

---

[38] *In re Fridley*, 2007 WL 2848383, at *2.

[39] *Id.* at **4-5.

[40] *In re Klaas*, 858 F.3d at 829-30; *but see In re Humes*, 579 B.R. 557, 562-67 (Bankr. D. Colo. 2018) (disagreeing with the *In re Klaas* court and finding that there is a five-year temporal limitation for plan payments that cannot be discretionarily extended by the court). *See also* Keith M. Lundin & William H. Brown, Chapter 13 Bankruptcy, 4th Ed., §343.1 at ¶ 2, Sec. Rev. July 22, 2004, www.Ch13online.com (noting that the bankruptcy code is silent with respect to when the completion of all payments under the plan occurs for purposes of discharge under § 1328(a)).

mandatory duty upon the subject of the command."[41]  Here, § 1328(a) contains the word "shall." There is no ambiguity in the statute.  It provides that "as soon as practicable after completion by the debtor of all payments under the plan," the bankruptcy court "shall grant the debtor a discharge of all debts provided for by the plan . . . ."  Thus, the bankruptcy court (who is the subject of the command) is required to grant the debtor a discharge after completion of all payments under the plan.  Because the bankruptcy court found that Debtors completed all payments under the plan, § 1328(a) entitles Debtors to a discharge.

The Court will address one other argument that the Trustee makes.  The Trustee argues that the issue in this case is analogous to a line of cases discussing whether a bankruptcy court can grant a trustee's competing request for conversion or dismissal under § 1307(c) over a debtor's request for dismissal under § 1307(b).  Section 1307(b) provides that "on request of the debtor at any time, if the case has not been converted . . . , the court *shall* dismiss a case under this chapter."  And as noted above, § 1307(c) provides that "on request of a party in interest or the United States trustee, . . . the court *may* convert a case . . . or *may* dismiss a case . . . whichever is in the best interests of the creditors and the estate . . . ."  Some courts find that § 1307(b) requires dismissal, while some courts find that a bankruptcy court can convert the case under § 1307(c) despite the debtor's request for dismissal.[42]

The Trustee's argument, however, is of no help.  First, although these statutes may be analogous, one of them is, nevertheless, an entirely different statute.  Next, even on these analogous

---

[41] *Forest Guardians v. Babbitt*, 174 F.3d 1178, 1187 (10th Cir. 1999) (citations omitted).

[42] *See In re Sinischo*, 561 B.R. 176, 183-84, n. 10, n. 11 (Bankr. D. Colo. 2016) (collecting cases).

statutes, the United States Supreme Court and the Tenth Circuit have not reached the issue.[43] Thus, there is no binding or persuasive law that this Court must or could follow. Finally, the Bankruptcy Court for the District of Kansas reached the issue and concluded contrary to the Trustee's position.

In *In re Mills*, the bankruptcy court concluded that the use of the word "shall" in § 1307(b) mandated an absolute right to a debtor's voluntary dismissal while the use of the word "may" in § 1307(c) was discretionary.[44] The court further found that the United States Supreme Court's opinion in *Law v. Siegel*[45] provided additional support for its conclusion and that the court "should not use § 105(a) to rewrite the mandatory provisions of § 1307(b).[46] This Court finds the bankruptcy court's reasoning persuasive. The use of the word "shall" is a mandatory requirement while the use of the word "may" implies discretion. Courts cannot and should not rewrite the words of a statute even in an effort to obtain an equitable result.[47]

Here, it is an unsatisfying result as it appears that Debtors gamed the system to their advantage. They did not disclose material information relevant to their circumstances. As the bankruptcy court noted, there were many troubling circumstances and Debtors' income dramatically increased raising the question of whether they could have or should have paid more. The bankruptcy court also noted that Debtors demonstrated disregard for the bankruptcy process

---

[43] *See In re Mills*, 539 B.R. 879, 884 (Bankr. D. Kan. 2015) (noting that "[t]here is no binding Tenth Circuit precedent on the question of whether a debtor's § 1307(b) unconditioned right to dismiss is trumped by the court's § 1307(c) power to convert a case in the best interests of the creditors.").

[44] *Id.* at 884-87.

[45] 571 U.S. 415 (2014).

[46] *In re Mills*, 539 B.R. at 884 (citing *Law*, 571 U.S. at 421).

[47] *Id.* at 886-87 (noting that courts should not redraft statutes to obtain equitable results); *In re Parffrey*, 264 B.R. at 414 (stating that "[t]he Supreme Court has made it abundantly clear that the words of a statute are not to be disregarded in search of equity or Congressional intent").

and the court's orders and abused the provisions, purpose, and spirit of Chapter 13.  Nevertheless, the bankruptcy court found that § 1328(c) mandated discharge because Debtors had completed all payments under the plan.  This Court joins in the bankruptcy court's determination.[48]  Accordingly, this Court affirms the bankruptcy court's decision.

**IT IS THEREFORE ORDERED** that the bankruptcy court's order is **AFFIRMED**.

**IT IS SO ORDERED** that the appeal is dismissed and the case closed.

Dated this 31st day of October, 2018.

*[signature]*

ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE

---

[48] Because the determination that completion of plan payments requires the bankruptcy court to discharge Debtors' bankruptcy under § 1328(c), the Court finds it unnecessary to address the Trustee's other argument that the bankruptcy court erred in finding that the Trustee could not bring up bad faith issues occurring prior to parties' December 2, 2015, agreed order without first revoking that order.